OVERTON, J.
 

 Plaintiff instituted this suit to be decreed the owner of fractional section 13, and of lot 1 of section 13, as per Kidder’s survey, in Tp. 20, R. 16, in Caddo parish, less 7.5 acres owned by R. L. Gilbert. Plaintiff alleges that it acquired the property from the Caddo Gas & Oil Company on October 28, 1918, which, in turn, acquired it by mesne conveyances from the United States, duly' of record. Plaintiff also alleges that defendant secured possession, in some way, of 32.'08 acres of said property; that he refused to deliver the property to it; and that the rental value of the property of which he has taken possession is $200 per annum. Plaintiff prays for judgment recognizing it as thé owner of the land, and condemning defendant to pay him $200 a year rent for the property for the year 1923, and a like sum for each year that he occupies it, until possession of the property is surrendered.
 

 Some two or three exceptions were filed by defendant against this demand, which, after they were disposed of by the lower court, seem to have passed out of the ease. After these exceptions were disposed of, defendant answered plaintiff’s demand. In his answer, defendant denies the title asserted by plaintiff to the property; avers that he took possession of that part of the property held by him, and is holding it, in good faith, under a homestead certificate issued to him by the United States; , that his title is superior to plaintiff’s; that he is not liable to plaintiff for rent; and, in the alternative, he avers that, should the title to the property be held to be vested in plaintiff, then he should have judgment against plaintiff for the improvements made by him upon the land, which he itemizes as follows: For clearing it, $500; for fencing it, $1,145; for two houses and outbuildings, erected by him on it, $700; for barns, $700; for cistern and guttering, $75; for a storm cellar, $50; for seeding six acres of alfalfa, $100; making a total for improvements of $3,270.
 

 After hearing the case, the trial court rendered judgment recognizing plaintiff to be the owner of the land sued for by him; also condemning defendant to pay plaintiff “$150 a year rent beginning January 1, 1922”; rejecting defendant’s reconventional demand for the value of the improvements, made by him on the property, except in the sum of $500, for improvements inseparable from the soil, which sum was allowed, and was permitted to operate only as an offset against the judgment for rent; and ordering defendant to remove all improvements which are separable from the soil within 30 days from the time of the finality of the judgment.
 

 While defendant in his brief assigns as error that the trial court erred in holding
 
 *1047
 
 that plaintiff had title to the property, yet he does not point out any defect 'in the title asserted and established by plaintiff, but treats the case as if the real question involved is whether defendant occupies the position of a possessor in good faith, and is therefore entitled to the value of his Improvements, and to the rejection of plaintiff’s demand for rent during the period of his good faith. In fact, he virtually says as much in his brief.
 

 We have, however, examined plaintiff’s title and fail to find any defect in it. The only part of the land to which defendant ever had even color of title or any right approaching it was to lot 1 of the section in question. It appears that, in March, 1919, he entered this lot as a homestead from the United States, and took possession of the property under this entry.» On October 13, 1920, he obtained a commutation certificate, wfiich was issued to him in contravention of an order of the General Land Office, of date April 6,1920, directing the withholding of certificates for this land because of the pendency of litigation in the courts of the United States, to establish title in the United States to it, and to other lands similarly situated.- On October 28, 1920, defendant submitted to the department commutation proof, and a final certificate was apparently issued to him. The case, in which the United States was seeking to establish title to the land, in defendant’s homestead entry, was decided unfavorably to the government by the Supreme Court of the United States in January, 1923. United States of America v. Southwestern Gas & Electric Co., 260 U. S. 662, 43 S. Ct. 236, 67 L. Ed. 448. The General Land Office, some two months after this decision was rendered, canceled defendant’s homestead entry and final certificate, thus leaving defendant without any shadow of title. Our conclusion is that the title to all of the.land sued for is in plaintiff.
 

 Defendant insists, however, that the trial court erred in holding him to be a possessor. in bad faith; thereby depriving him of the rights of a possessor in good faith. He urges that, since he defeated the claims of another homestead entryman to the same property, took possession of it under a certificate of homestead entry, and remained in possession of it for several years without being molested by plaintiff, he should be held to be a possessor in good faith.
 

 While it does not clearly appear when plaintiff first obtained knowledge that defendant was in possession of-the property, yet it does appear that, when defendant took possession of it, he knew that plaintiff claimed it as owner. He himself confesses to this. He knew, therefore, that the validity of the title he was seeking to acquire was dependent on the defeat of plaintiff’s title. With this knowledge before him he took possession.
 

 Article 3451 of the Civil Code defines the possessor in good faith as follows:
 

 “The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he. supposes to belong to the person selling it to him, but which, in fact, belongs to another.”
 

 Article 3452 of the Civil Code defines a possessor in bad faith in the following words:
 

 “The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.”
 

 In Heirs of Dohan v. Murdock, 41 La. Ann. 494, 6 So. 131, it was said that “the essential conditions of good faith which our law contemplates in the purchaser of property under a defective title are that he (the purchaser) had just reason to believe that he would possess the property as master, and that he was ignorant of the defects of the title which he was acquiring.” In the (same case it was held that a misconception of the law, no matter how honestly it may be en
 
 *1049
 
 tertained, does not have the effect of making one a possessor in good faith. See, also, McDade v. Bossier Levee Board, 109 La. 625, 33 So. 628. In Ledoux, Administrator, v. Burton, 30 La. Ann. 576, it was held that one who buys property, knowing that the title to it is in dispute, is not an innocent purchaser.
 

 Since defendant knew, when he took possession, that plaintiff was claiming title to the property; and since plaintiff has established his title, it must be held that defendant was a possessor in bad faith, in contemplation of law, and he must abide the consequences following such a possessor.
 

 Since defendant occupies the position of a possessor in bad faith, and since plaintiff has elected not to keep the improvements made by defendant, and pay for them, defendant cannot recover their value, save the amount of the enhancement of the property resulting from such improvements, as the clearing of the land and others which are inseparable from the soil, and then ’ only as an offset against fruits and revenues, but must remove or abolish them. Civil Code, art. 508; Voiers v. Atkins Bros., 113 La. 303, 36 So. 974; Quaker Realty Co. v. Bradbury, 123 La. 20, 48 So. 570. It may be here said that none of the improvements, the value of which are sued for in this case, appear to have been made for the preservation of the property.
 

 The trial court has fixed the enhanced value of the property, resulting from the improvements that are inseparable from the soil, which we take to be the clearing of the land, the planting of alfalfa, and the construction of a storm ■ cellar, in the sum of $500, and has allowed the claim for rent to be offset to that extent, or, in other words, to the extent of $500, the allowance of that sum being made only for use as an. offset, and has ordered deféndant to remove all other improvements made by him within a specified time. Defendant has no cause to complain of this part of the decree, and plaintiff makes no complaint as to it.
 

 Defendant, being a possessor in bad faith, must also pay rent during the period of his occupancy. Walling’s Heirs v. Morefield, S3 La. Ann. 1174. The trial court, as stated in the first part of this opinion, has allowed plaintiff rent in the sum of “$150 per year, beginning January 1, 1923.” The evidence justifies this allowance. Plaintiff sued for rent from that date until placed in possession of the property, and asks that the judgment be amended so as to allow the rent until that time. The amendment is unnecessary. What the judgment means is that $150 a year rent is allowed, beginning January 1, 1923, until possession of the property is surrendered.
 

 Our conclusion is that the judgment is correct in recognizing plaintiff as the owner of the land sued for, and in the remaining particulars mentioned.
 

 For these reasons, the judgment appealed from is affirmed. '